IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDMOND OSCAR WALKER,

               Petitioner,

      vs.

MATTHEW CATE, Secretary, California
Department of Corrections and
Rehabilitation,

              Respondent.

No. 2:07-cv-00803-JKS

MEMORANDUM DECISION
and
ORDER
[Re:  Motion at Docket No. 61]

Edmond Oscar Walker, at the time of filing his Petition was a state prisoner appearing

*pro se*, filed a Petition for Habeas Corpus relief under 28 U.S.C. § 2254.[1]  Walker is currently

under the supervision of the California Department of Corrections and Rehabilitation in parole

status.[2]  Respondent ("State") has answered, and Walker has replied.  In his reply, Walker

requested an evidentiary hearing.  At Docket No. 61 the State filed a renewed motion to dismiss

the Petition as moot.[3]  At Docket No. 62, Walker has opposed the Motion to Dismiss, and the

State has replied at Docket No. 63.

---

[1] Subsequent to filing the petition, counsel was appointed to represent Walker.

[2] At the time Walker filed his petition, he was incarcerated in the Folsom State Prison.
Subsequently, Walker was granted parole, and the State moved to dismiss the case as moot.  This
Court denied the motion to dismiss.  Docket No. 55.

[3] The State previously filed a motion to dismiss the Petition on the ground that, because
Walker was subsequently released on parole, the matter was moot and this Court could no longer
grant effective relief.  Docket No. 52.  This Court denied that motion.  Docket No. 55.  The
motion currently pending before the court renews that motion on the same ground.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In September 1982 Walker was convicted on a guilty plea of second-degree murder and sentenced to an indeterminate prison term of 15 years to life.  Walker does not challenge his conviction and sentence.  In his Petition, Walker challenges the Governor's reversal of the Board of Parole Hearings ("Board") grant of parole in 2005.  Walker timely filed a petition for habeas relief in the Alameda County Superior Court, which denied his petition in a reasoned decision. Walker's subsequent petition for habeas relief in the California Court of Appeal, First Appellate District, was denied, on the basis that "Petitioner needs to provide a transcript of the hearing before the Board of Prison Terms.  (See *In re Harris* (1993) 5 Cal 4th 813, 827, fn 5.)  The clerk is directed to return the petition to petitioner and to retain a copy as a duplicate original."[4] Walker's petition for review was summarily denied without opinion or citation to authority by the California Supreme Court on September 13, 2006.[5]  Walker then filed a second habeas petition in the California Supreme Court, which was denied on March 21, 2007, citing *In re Miller* (1941) 17 Cal.2d 734; *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th 464, 474.[6]  Walker timely filed his petition for relief in the Central District of California on March 27, 2007, which transferred the matter to this Court.

After the pleadings were complete and the issues joined, this Court stayed further proceedings in this action pending a decision by the en banc panel of the United States Court of

---

[4] Docket 21-3, p. 2.

[5] Docket 21-5, p. 2.

[6] Docket No. 1, p. 139.

Appeals for the Ninth Circuit in *Hayward*.[7]  The Ninth Circuit has issued its en banc opinion in

*Hayward*.[8]  Therefore, the Court will terminate the stay and render a decision.

At Docket No. 57 this Court entered an Order directing the parties to file supplemental

briefs addressing the *Hayward* decision, in particular that "[t]he prisoner's aggravated offense

does not establish current dangerousness 'unless the record also establishes that something in the

prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state'

supports the inference of dangerousness."[9]  This Court also directed the parties to consider two

Ninth Circuit Decisions applying *Hayward*.[10]  Both parties have submitted supplemental briefing.

The facts of the underlying offense, as summarized by the Governor:

> Mr. Phillips had been dating a woman for about eight years.  The week
> before the murder, the woman's son, Edmond Walker, learned that Mr. Phillips
> had slapped his mother and pushed her out of a moving car.  Sometime prior to
> the discovery of Mr. Phillips' body, Mr. Walker, armed with a .38 caliber gun,
> visited Mr. Phillips at his apartment to confront him about his mistreatment of Mr.
> Walker's mother.  As noted in the probation report, the two men talked until the
> conversation became heated.  Mr. Phillips told Mr. Walker to stay out of his
> personal life and business.  Following that comment, Mr. Walker went into the
> bathroom, took out the gun, returned to the room, and shot Mr. Phillips in the
> back of the head as Mr. Phillips sat in a chair.[11]

---

[7] *Hayward v. Marshall*, 512 F.3d 536, *rehrg en banc granted*, 527 F.3d 797 (9th Cir. 2008), Case No. 06-55392.

[8] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

[9] *Id.* at 562.  In any case in which briefing and oral argument, if any, take place and thereafter an arguably controlling case is decided by a higher court, it is this Court's policy to permit the parties to address the intervening case.  In part, this is a courtesy to the parties and in part a recognition that ours is an adversary system in which the parties must be given an opportunity to address possible controlling authority before a decision is reached.

[10] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

[11] Docket 21-1, p. 2.

In reversing the decision of the Board, the Governor held:

> Mr. Walker has been in prison a long time now, nearly 23 years, and he has made some creditable gains during this period.  But, the standard by which I am governed is whether I believe Mr. Walker would pose an unreasonable risk of danger to society if released from prison at this time.  After carefully considering the very same factors as the Board is required to consider, I find that the gravity of the second-degree murder committed by Mr. Walker presently outweighs the positive factors supporting his release.  Accordingly, I REVERSE the Board's 2005 decision to grant parole to Mr. Walker.[12]

## II.  GROUNDS RAISED/DEFENSES

Walker raises a single ground for relief:  the Governor's determination was unsupported by the evidence, failed to consider all relevant evidence, and failed to provide individualized consideration of the factors.  The State does not assert any affirmative defense.[13]

## III.  DISCUSSION

Walker challenges the reversal by the Governor of the decision of the Board to grant him parole on the basis that the reversal was based primarily, if not wholly, upon the nature of his commitment offense.  Walker, expressing general disagreement with the Governor's characterization of certain factors, as opposed to those of the Board, argues that the Governor did not properly weigh all the relevant factors or give Walker individualized consideration and should, therefore, have reached the same conclusion as the Board.  In the last reasoned decision by a state court, the Alameda County Superior Court rejected Walker's position that the Governor's decision was unsupported by some evidence, holding:

---

[12] Docket 21-1, p. 4.

[13] See Rules—Section 2254 Cases, Rule 5(b).  Although it purports to preserve a claim that Walker's claim is unexhausted, the State does not assert the claim or provide any factual support or legal argument in support of a claim that Walker has not exhausted his state court remedies.

Petition for writ of habeas corpus is denied.  Petitioner's petition fails to state a prima facie case for relief.  The Governor's decision to reverse the decision by the parole board must be supported by some evidence in the record.  Only a modicum of evidence is required.  The weight to be given the evidence is a matter is within the authority of the Governor.  As long as the Governor's decision reflects due consideration of the specified factors applied to the Petitioner in accordance to the applicable legal standards, the court's review is limited to whether there is some evidence in the record to support the Governor's decision.  The nature of the Petitioner's offense alone can constitute a sufficient basis for denying parole.  In Re Rosenkrantz 29 Cal 4th 616.  There is nothing in the record presented by Petitioner to demonstrate that the Governor's decision was arbitrary or capricious.  There is nothing in the record to demonstrate that the Governor acted in accordance with some blanket policy to deny parole without individualized considerations of factors applicable to Petitioner.  The record does not support a claim that the Governor's actions in any way violated the due process rights of the Petitioner.[14]

"When habeas courts review the 'some evidence' requirement in California parole cases, both the subsidiary findings and the ultimate finding of some evidence constitute factual findings."[15]  In its Order requesting supplemental briefing, this Court directed the State to "specifically identify those characteristics, other than the underlying commitment offense, that support a finding that release of the Petitioner to parole status poses a current threat to public safety, and point to the specific evidence in the record that supports that determination."[16]  In response, the State argues that, because *Hayward* was wrongly decided and represents circuit law, not the law as established by the Supreme Court, this Court need not follow *Hayward* or the Ninth Circuit cases applying *Hayward*.  The State, asserting that the Order requiring that the evidence supporting the finding that the release of Walker to parole status poses a current threat to public safety be identified is an improper question, declined to provide the required

---

[14] Docket No. 21-2, p.2.

[15] *Cooke*, 606 F.3d at 1216.

[16] Docket No. 57, p. 2.

information.[17]  This Court disagrees.  This Court, a district court, is bound by the published

decisions of a panel of the Ninth Circuit until those decisions are overruled or undermined by

higher authority, e.g., an en banc decision of the Ninth Circuit, a Supreme Court decision, or

subsequent legislation.[18]  This has not occurred.  This Court notes that if, as the State contends,

*Hayward* was incorrectly decided, the appropriate remedy is to file a petition for a *writ of*

*certiorari* in the Supreme Court within 90 days of the date the petition for rehearing in *Hayward*

was denied.[19]  The 90-day period began to run June 2, 2010, when the Ninth Circuit denied

Hayward's petition for a rehearing.[20]   As the time for filing a petition for *certiorari* had not yet

expired, if the State contemplated seeking *certiorari*, the State could have requested this Court to

grant additional time to comply with the Order.  The Court notes that *Hayward* affirmed the

denial of parole.  Thus, the State could have argued that denial of parole was consistent with

*Hayward*.  Alternatively, the State could have preserved its arguments that *Hayward* was

---

[17] If this were a single instance, this Court would be inclined to ignore the refusal to address *Hayward*.  Unfortunately, this is not such an isolated incident.  This Court has received several similar responses to its order in other parole cases that were held in abeyance pending the en banc decision in *Hayward*, e.g., *Stallsworth v. Sisto*, Case No. 2:07-cv-02466-JKS, *Singer v. Sisto*, Case No. 2:08-cv-00048-JKS, *Dewey v. Sisto*, Case No. 2:08-cv-00580-JKS, and *Feliz v. Sisto*, Case No. 2:08-cv-01508-JKS, of which this Court takes judicial notice.  Fed. R. Evid. 201.  Consequently, this Court must conclude that the position taken herein represents the official position of the State of California, acting through its Attorney General.

[18] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  A complication exists because the *Hayward* court predicated a federally protected liberty interest on California state statutes, regulations, and California Supreme Court decisions.  Thus, a California Supreme Court decision subsequent to *Hayward*, *Pearson*, and *Cooke* rejecting their reasoning might be highly relevant.  No such case has been identified.

[19] Supreme Court Rule 13.

[20] *Hayward v. Marshall*, Ninth Circuit Case No. 06-55392, Docket No. 120, of which this Court takes judicial notice.  Fed. R. Evid. 201.

erroneously decided for further appellate review, and still complied with the express terms of the Order.  What the State could not do is what it did do in this case—ignore the clearly articulated requirements of *Hayward* and decline to obey this Court's specific order.[21]  In so doing, even if this Court's Order was "improper," the State did so at its own peril.[22]

Because the State failed to identify those characteristics, other than the underlying commitment offense,[23] supporting a finding that Walker presents a current threat to public safety, or the evidence supporting that finding, this Court must assume that the State concedes no such characteristic or evidence supporting any such characteristic exists.[24]

─────────────────────

[21] Indeed, as a result of the failure of the State to comply with this Court's Order, the State appears to assume that this Court will mine the record to find sufficient evidence to support the decision of the state court.  It is unquestionably the rule that the burden of establishing a violation of a constitutional right sufficient to warrant habeas relief is placed on the petitioner.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").  That does not, however, mean that the petitioner has the burden of proving a "negative," i.e., that something does not exist.  The State should not expect a federal district court to mine the record to find evidence that Walker is currently dangerous, which, if found, would support a determination that, as required by *Hayward*, the California judicial decision approving the Governor's decision rejecting parole was not an unreasonable application of the California some evidence requirement, or was not based on an unreasonable determination of the facts in light of the evidence.

[22] *See Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) ("until its decision is reversed for error by orderly review, either by itself or by a higher court, [a court's] orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.") (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-90 (1922)); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (same); *United States v. United Mine Workers of America*, 330 U.S. 358, 293 (1947) (same).

[23] Indeed, the Governor in reversing the decision of the Board did not cite any factor other than "the gravity of the second-degree murder," in support of his conclusion.

[24] This Court recognizes that the court in *Hayward* ultimately affirmed the denial of parole.  The Attorney General and his subordinates know the record in this case.  They also know the Ninth Circuit's decision in *Hayward* and the California Supreme Court decisions in

(continued...)

This Court must decide the case on the law as it exists at the time it renders its decision and, if the law changes while the case is pending, this Court applies the new rule.[25]  Thus, although it establishes a new rule, the holding in *Hayward* is controlling.  In this case, this Court "need only decide whether the California judicial decision approving the Governor's decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[26]  By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same standards as are applied to the determination of the law as established by the United States Supreme Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court

---

[24](...continued)
*Lawrence* and *Shaputis*.  If the record in this case could be reconciled with those cases and the denial of parole, competent counsel would have so argued.  Because the Attorney General is competent counsel, the State's failure to develop the argument lends support to only one conclusion:  that the record will not support a finding of present dangerousness.

[25] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

[26] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

proceeding."[27]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[28]  When a claim falls under the "unreasonable

application" prong, a state court's application of Supreme Court precedent must be objectively

unreasonable, not just incorrect or erroneous.[29]  The Supreme Court has made clear that the

objectively unreasonable standard is a substantially higher threshold than simply believing that

the state court determination was incorrect.[30]  Consequently, it appears that, under the mandate of

*Hayward*, this Court must canvas and apply California law as it existed at the time of the state

court decision to the facts in the record as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts

applying state law—in effect serving as a super-appellate court over state court decisions.  This is

in tension with the holdings of the Supreme Court.  It is a fundamental precept of dual federalism

that the states possess primary authority for defining and enforcing the criminal law.[31]  A

fundamental principle of our federal system is "that a state court's interpretation of state law,

---

[27] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[28] *Williams*, 529 U.S. at 412.

[29] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[30] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[31] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus."[32]  This principle applied to federal habeas review of state convictions

long before AEDPA.[33]  A federal court errs if it interprets a state legal doctrine in a manner that

directly conflicts with the state supreme court's interpretation of the law.[34]  It does not matter that

the state supreme court's statement of the law was dictum if it is perfectly clear and

unambiguous.[35]

At the time of the state court decision in this case, the California "some evidence" rule

was embodied in *Rosenkrantz* and *Dannenberg*.[36]  Subsequently, the California Supreme Court,

applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[37] and *In re Shaputis*.[38]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .]  Due process of law requires that the Governor's decision be
> supported by some evidence in the record.  Only a modicum of evidence is
> required.  Resolution of any conflicts in the evidence and the weight to be given
> the evidence are matters within the authority of the Governor.  [. . . .]  [T]he
> precise manner in which the specified factors relevant to parole suitability are
> considered and balanced lies within the discretion of the Governor . . . .  It is
> irrelevant that a court might determine that evidence in the record tending to

---

[32] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[33] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[34] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[35] *Id.* at 76.

[36] The Alameda County Superior Court cited *Rosenkrantz* in its decision.

[37] 190 P.3d 535 (Cal. 2008).

[38] 190 P.3d 573 (Cal. 2008).

establish suitability for parole far outweighs evidence demonstrating unsuitability for parole.  As long as the Governor's decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the Governor's decision.[39]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.)  Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant.  [. . . .]
>
> In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.  Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ."  (Pen.Code, § 3041, subd. (a).)  "The [Governor's] authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted.  Otherwise, the [Governor's] case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.)  [¶]  Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." ( Citation omitted.)[40]

---

[39] *Rosenkrantz*, 59 P.3d at 218.  Quoted with approval in *Shaputis*, 190 P.3d at 585.

[40] *Id*. at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

In *Dannenberg* the California Supreme Court explained:

> [. . . .]  So long as the [Governor's] finding of unsuitability flows from
> pertinent criteria, and is supported by "some evidence" in the record before the
> [Governor] [citing *Rosenkrantz*], the overriding statutory concern for public safety
> in the individual case trumps any expectancy the indeterminate life inmate may
> have in a term of comparative equality with those served by other similar
> offenders. Section 3041 does not require the Board to schedule such an inmate's
> release when it reasonably believes the gravity of the commitment offense
> indicates a continuing danger to the public, simply to ensure that the length of the
> inmate's confinement will not exceed that of others who committed similar
> crimes.[41]

The California Supreme Court then held:

> Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support
> the [Governor's] determination that Dannenberg's crime was "especially callous
> and cruel," showed "an exceptionally callous disregard for human suffering," and
> was disproportionate to the "trivial" provocation.  Accordingly, under
> *Rosenkrantz,* the [Governor] could use the murder committed by Dannenberg as a
> basis to find him unsuitable, for reasons of public safety, to receive a firm parole
> release date.[42]

The Governor must, however, "point to factors beyond the minimum elements of the

crime for which the inmate was committed" that demonstrate the inmate will, at the time of the

suitability hearing, present a danger to society if released.[43]  The Governor "may credit evidence

suggesting the inmate committed a greater degree of the offense than his or her conviction

evidences."[44]  In *Lawrence*, however, the California Supreme Court rejected the argument "that

the aggravated circumstances of a commitment offense inherently establish current

dangerousness," holding:

---

[41] *Dannenberg*, 104 P.3d at 795.

[42] *Id.* at 803.

[43] *Id*. at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[44] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

12

"[W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety."[45]

This is the clarification upon which *Hayward*, *Pearson*, and *Cooke* rely, and it was the language in *Lawrence* to which this Court alluded in its Order, which the State declined to address.

With respect to the underlying commitment offense, the applicable regulation provides:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.[46]

The evidence supports a finding that this case falls with the scope of § 2402(c)(1)(B) and (E).  Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for that of the Governor.  Judicial review of a decision denying parole is "extremely deferential."[47]  Thus, under *Rosenkrantz* and *Dannenberg*, this Court could not say that the decision of the Alameda County Superior Court was contrary to, or involved an unreasonable

---

[45] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

[46] Cal. Code. Regs. tit. 15, § 2402(c).

[47] *Rosenkrantz*, 59 P.3d at 210.

13

application of California law at the time it was decided, or was based on an unreasonable

determination of the facts in light of the evidence.  Because *Hayward*, *Pearson*, and *Cooke*

require that *Lawrence* and *Shaputis* be applied, the decision of the Alameda County Superior

Court in this case was contrary to, or involved an unreasonable application of California law.

While the record in this case might support an argument that the denial of Walker's

parole can be reconciled with *Cooke* and *Pearson*, the State has rejected the opportunity to make

that argument.  Instead, the State decided to stand on its position that *Hayward*, *Pearson*, and

*Cooke* were wrongly decided and apparently void.

The Governor found that Walker's crime was atypical and a response to a trivial

provocation.  This would be sufficient under *Rosenkrantz* and *Dannenberg*.  What the Governor

did not do, and the State expressly declined to do, is explain how events ending in 1982 show

that Walker presented a significant risk to public safety in 2005, rendering it insufficient under

*Lawrence* and *Shaputis*.  Thus, under *Hayward*, *Pearson*, and *Cooke*, this Court is compelled to

find that the Governor's denial of parole violated Walker's liberty interest protected by the Due

Process Clause of the Fourteenth Amendment.[48]

---

[48] In reaching this conclusion, this Court is mindful of the following significant problems:
(1) the applicability of *Lawrence* and *Shaputis* to cases in which the state court decision became
final prior to August 21, 2008; and (2) the appropriate scope of review of the application by the
California courts of the California "some evidence" rule by federal courts in federal habeas
proceedings under 28 U.S.C. § 2254(d).  In other words, to what extent may subsequent
California cases modify the "liberty interest" established by California law and recognized in
*Hayward*, *Pearson*, and *Cooke*.

IV.  PENDING MOTIONS

**A.      Evidentiary Hearing**

Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[49]  It does not appear from the record that the California courts made any independent evidentiary findings, and review in this case is based upon the findings of the Board, which did hold a full hearing developing the facts.  Walker has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve.  Furthermore, the decision of this Court renders any need for an evidentiary hearing moot.  For the foregoing reasons, the request for an evidentiary hearing is, therefore, DENIED.

**B.      Renewed Motion to Dismiss**

At Docket No. 61 the State has moved to dismiss the petition as moot.  The State candidly acknowledges the motion is based upon the same facts as the prior motion that this Court denied:  that the subsequent release of Walker on parole renders the matter moot.  In denying the first motion to dismiss, this Court determined that it was not moot on the basis that, should this court determine that the Governor's action violated Walker's due process rights, it still might be able to grant such relief "as law and justice require."[50]  Thus, the current motion is the functional equivalent of a request for reconsideration of the prior order declining to dismiss the case as moot.

---

[49] *Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds Keeny v. Tamayo-Keyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[50] 28 U.S.C. § 2243.

15

The prior Order of this Court is the law of the case.  Under the law of the case doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case.[51]  However, the law of the case doctrine is not a shackle without a key.  As long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause.[52]

That inherent power is not unfettered: "the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice."[53]  The State argues that there has been an intervening change in controlling law.  Specifically:  the decisions of the California Supreme Court in *In re Prather*[54] and the Ninth Circuit Court of Appeals in *Haggard v. Curry*.[55]

In *Prather*, a case consolidated with *In re Molina*, the Board denied both Prather and Molina parole.  The California Supreme Court granted review in *Prather* to determine the "proper scope of an order directed to the Board of Parole Hearings (the Board) when a reviewing court concludes that a decision to deny parole by the Board is not supported by 'some evidence' that a prisoner remains a current threat to public safety."[56]  The California Supreme Court

---

[51] *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

[52] *City of Los Angeles, Harbor Div. v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).

[53] *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[54] 234 P.3d 541, 550-54 (Cal. 2010)

[55] 635 F.3d 1035, 1041-42 (9th Cir. 2010) (citing *Prather*).

[56] *Prather*, 243 P.3d at 544.

16

acknowledged that, because *Lawrence* and *Shaputis* concerned the Governor's reversal of action taken by the Board granting parole, those cases left that question open.[57]  In answering the question, the California Supreme Court held:  the appropriate remedy was a remand to the Board for a new hearing consistent with the requirements of due process.[58]  This case, as in *Lawrence* and *Shaputis*, concerns the Governor's reversal of action taken by the Board, not a denial of parole by the Board.  Having determined that Walker was denied due process of law, the question is whether, because he was subsequently released to parole, this Court can grant Walker any relief.  Thus, neither *Prather* nor *Haggard* are factually apposite to this case, and, therefore, are not directly controlling.

Because *Shaputis* affirmed the Governor's action, it provides no guidance.  Therefore, this Court looks to *Lawrence*, in which the Governor's action was reversed, for any guidance it may provide.  In *Lawrence*, the California Court of Appeal, Second Appellate District, finding that the Governor's action lacked "some evidence" to support a finding that releasing Lawrence to parole would represent an unreasonable risk of danger to the community, vacated the Governor's reversal and reinstated the Board's grant of a release to parole.[59]  The California Supreme Court affirmed the judgment of the Court of Appeal.[60]  Thus, *Lawrence* controls, not *Prather*, or *Haggard*, which adopted the *Prather* remedy.

---

[57] *Id.*

[58] *Id.* at 544, 550.

[59] *Lawrence*, 190 P.3d at 538.

[60] *Id.* at 565.

17

The appropriate remedy in this case is not, as the State suggests, to remand the matter to the Board for a new hearing, but to vacate the Governor's reversal and reinstate the Board's decision.[61]  Because Walker has been released to parole status, to ensure that Walker receives appropriate and complete relief, and to prevent any misinterpretation of scope and effect of this Court's order, the matter must be remanded to the Board to calculate a release date in accordance with otherwise applicable California law.  Walker's maximum term of parole must be determined as though Walker were released to parole status on that date.

Because this Court may grant relief in this case, it is not moot, and the Motion to Dismiss at Docket No. 61 is DENIED.

## V.  ORDER

Based upon the foregoing,

**IT IS THEREFORE ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** Respondent's Motion to Dismiss at Docket No. 61 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the Governor's reversal of the decision of the Board of Parole Hearings is **VACATED** and the decision of the Board of Parole Hearings **REINSTATED**.

---

[61] This is consistent with *Haggard*, 635 F.3d at 1041(the remedy that a federal habeas court may grant is as defined and limited by the state).

18

**IT IS FURTHER ORDERED THAT** this matter is remanded to the California Board of Parole Hearings for a determination of Walker's release date under otherwise applicable California law as though the Board's decision had not been reversed by the Governor.

**IT IS FURTHER ORDERED THAT**, for the purposes of applying the maximum period of parole as provided in California Penal Code § 3000, the release date as determined by the Board of Parole Hearings in conformance with this decision is deemed to be the effective date of Walker's release to parole status.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  December 22, 2010.

　　　　　　　　　　　　　　　　　   /s/ James K. Singleton, Jr.
　　　　　　　　　　　　　　　　　JAMES K. SINGLETON, JR.
　　　　　　　　　　　　　　　　　United States District Judge